**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-05232

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL CONWAY, in his official capacity as the Colorado Insurance Commissioner,

Defendant.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiff, the United States of America, by its undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. In this action, and pursuant to the Federal Priority Statute, the United States seeks to declare unlawful and permanently enjoin Colorado Insurance Commissioner Michael Conway from distributing funds from the estate of an insolvent insurer to certain general creditors before satisfying the United States' claim.

2. Passed in 1797, the Federal Priority Statute, 31 U.S.C. § 3713, "is almost as old as the Constitution." *United States v. Moore*, 423 U.S. 77, 80 (1975). It requires that, when various conditions are met, an insolvent entity pay its debts to the United States first before paying its other

creditors. This primacy is necessary to secure adequate revenue to the United States and to safeguard the public fisc.

3. The Supreme Court has affirmed the applicability of the Federal Priority Statute to state insurance insolvency proceedings, holding that estate funds must be paid to the United States on its claims ahead of other creditor claims save for two exceptions. Specifically, both payments that "protect policyholders" and payments that reimburse "the expenses of administering the insolvency proceeding," may be paid ahead of the United States' claim. *U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491, 508-09 (1993).

4. Commissioner Conway seeks to contravene the Federal Priority Statute. As the state court-appointed liquidator of Friday Health Plans of Colorado, Inc., ("Friday Health"), he is charged with distributing funds from the insolvent insurer's estate to its creditors. One such creditor is the U.S. Department of Health and Human Services ("HHS"). Friday Health owes HHS at least $23,755,788.68, largely under the federally-operated risk adjustment program, which aims to expand coverage in the health insurance market by allocating charges and payments among insurers to account for coverage of high-risk patients.

5. Commissioner Conway must prioritize HHS's claim consistent with the Federal Priority Statute (as interpreted by the Supreme Court in *Fabe*). But, instead, Commissioner Conway is preparing to violate federal law, as he has sought and received state court approval to pay certain general creditors (health care providers who contracted with Friday Health) $1,908,897.03 ahead of HHS's claim.

6. As set forth below, Commissioner Conway's proposed distribution would contravene the Federal Priority Statute. The Court should declare that the distribution is unlawful and enjoin Commissioner Conway from making this distribution.

**JURISDICTION AND VENUE**

7. This action arises under the Constitution of the United States, Article VI, Clause 2, and the Federal Priority Statute, 31 U.S.C. § 3713. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345, and the United States seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202.

8. Venue lies in the District of Colorado pursuant to 28 U.S.C. § 1391(b). Defendant Michael Conway is the Commissioner of Insurance for Colorado, who resides in the District of Colorado for the purpose of venue. A substantial part of the events or omissions giving rise to this lawsuit occurred or will occur in the District of Colorado.

**PARTIES**

9. The United States of America is the plaintiff in this action, suing on its own behalf, as well as on the behalf of HHS.

10. HHS is an executive department of the United States. *See* Department of Education Organization Act, Pub. No. 96-88, 93 Stat. 668 (1979). Among other tasks, HHS is responsible for administration of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), which Congress passed with the aim of expanding coverage in the health insurance market. As part of administering the ACA, HHS runs the risk adjustment program, which seeks to "reduce the incentives for [insurers] to avoid higher-risk enrollees." Patient Protection

and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2014, Final Rule; 78 Fed. Reg. 15,410, 15,411 (Mar. 11, 2013); 42 U.S.C. § 18063.

11. Defendant, Michael Conway, is the Colorado Insurance Commissioner. He has served in this role since January 22, 2019. Commissioner Conway oversees the liquidation of insolvent insurers within the state. Colo. Rev. Stat. § 10-3-517(1).

12. He is being sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

### Applicable Federal Law Governing the Insolvency of Health Insurers

13. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

14. The Federal Priority Statute, 31 U.S.C. § 3713, mandates that a "claim of the United States Government shall be paid first when . . . [1] a person indebted to the Government [2] is insolvent and [3] an act of bankruptcy is committed." 31 U.S.C. § 3713(a) (quotation modified). For purposes of the Federal Priority Statute, a "person" includes corporations. *Beaston v. Farmers' Bank of Del.*, 37 U.S. 102, 134-35 (1838).

15. This statute "is almost as old as the Constitution, and its roots reach back even further into the English common law; the Crown exercised a sovereign prerogative to require that debts owed it be paid before the debts owed other creditors." *United States v. Moore*, 423 U.S. 77, 80 (1975). Although the statute has undergone revisions and recodifications, "[t]he text of the priority statute . . . is virtually unchanged since its enactment in 1797." *United States v. Est. of*

*Romani*, 523 U.S. 517, 524 (1998). "The priority proceeds from 'motives of public policy, in order to secure an adequate revenue to sustain the public burthens and discharge the public debts.'" *Id.* at 81 (quoting *United States v. Bank of N.C.*, 31 U.S. 29, 35 (1832)). The Supreme Court has long held that because "that policy has mainly a reference to the public good, there is no reason for giving to (the statute) a strict and narrow interpretation.'" *Id.* at 81-82 (quoting *Bank of N.C.*, 31 U.S. at 35).

16. In *Fabe*, the Supreme Court considered how the Federal Priority Statute applies in the context of a state insolvency scheme, and concluded that an insolvent insurer's estate may make payments that "protect policyholders" and that reimburse "the expenses of administering the insolvency proceeding," ahead of the United States' claim. *U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491, 508-09 (1993). But all other claims, including general creditor claims, may only be paid after the United States' claims are paid. *Id.*

17. In 2010, Congress passed the ACA with the aim of expanding coverage in the health insurance market. To help achieve this goal, the ACA includes a risk adjustment program. 42 U.S.C. § 18063; Patient Protection and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2014, Final Rule; 78 Fed. Reg. 15,410, 15,411 (Mar. 11, 2013). The risk adjustment program encourages insurers to enroll higher-risk enrollees by charging insurers whose policyholders had below-average actuarial risk for a given state market risk pool and then paying the insurers in that state market risk pool whose policyholders had above-average actuarial risk. 42 U.S.C. § 18063(a). In other words, the risk adjustment program aims to make enrollees equally profitable for insurers, thus stabilizing the individual and small group markets to support various

ACA mandates, including the prohibition on rating based on health status and exclusion of pre-existing conditions. *See, e.g.*, 42 U.S.C. § 18001(e) (protection against dumping risk by issuers).

18. Under the ACA, a state may not operate the risk adjustment program absent approval from HHS. 42 U.S.C. §§ 18041(b), 18063(a); 45 C.F.R. § 153.310. Since Congress passed the ACA, Colorado has never sought or obtained HHS approval to operate the risk adjustment program in its state. *See* Patient Protection and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2024, Final Rule; 88 Fed. Reg. 25,740, 25,742 n.3 (Apr. 27, 2023). As such, HHS operates the risk adjustment program in Colorado. 45 C.F.R. § 153.310(a)(2).

**Colorado's State Insolvency Scheme**

19. A Colorado state court may enter an order liquidating an insurer in the state on a variety of bases. Colo. Rev. Stat. § 10-3-516(1). Once the state court enters a liquidation order, it appoints the Colorado Insurance Commissioner as the liquidator, who then "take[s] possession of the assets of the insurer and . . . administer[s] them under the general supervision of the court." Colo. Rev. Stat. § 10-3-517(1).

20. As part of this liquidation process, the Commissioner receives proofs of claim from the insolvent insurer's various creditors. Colo. Rev. Stat. §§ 10-3-517(1), 10-3-534. The Commissioner then distributes funds to satisfy these claims in accordance with the Colorado priority statute. Colo. Rev. Stat. § 10-3-541. As relevant here, the Colorado priority statute establishes class 2 claims as "[a]ll claims under policies including such claims of the federal or any state or local government including unearned premium claims, third-party claims, and all claims of a guaranty association or foreign guaranty association." Colo. Rev. Stat. § 10-3-541(1)(b). Class 3 claims include "[c]laims of the federal government." Colo. Rev. Stat. § 10-3-

541(1)(c). And class 6 claims include "any other claims." Colo. Rev. Stat. § 10-3-541(1)(f). Per the priority scheme, the Commissioner must pay all class 2 claims before making any payments toward class 3 (or lower) claims. Colo. Rev. Stat. § 10-3-541(1).

21. To protect policyholders in the case of an insurer's insolvency, Colorado created an insurer guarantee fund. This fund collects fees from each insurer in the state. Then, if any insurer enters liquidation, the fund pays the claims submitted under the liquidating insurer's policies, up to the guaranty fund's coverage limit of $500,000. Colo. Rev. Stat. § 10-20-104(3)(b)(I)(B).

**FACTUAL ALLEGATIONS**

22. On August 16, 2023, a Colorado state court entered an order liquidating Friday Health and appointing Commissioner Conway as its liquidator. Ex. 1.

23. The state court permitted Commissioner Conway to employ Don Roof of Examination Resources, LLC, as a Special Deputy Receiver. Ex. 1.

24. As part of that liquidation process, HHS submitted a claim for at least $23,755,788.68. Ex. 2. This claim arose largely from HHS's operation of the federal risk adjustment program in Colorado. Because Friday Health's enrollees had below average actuarial risk in various state market risk pools for the 2022 and 2023 benefit years, the ACA's risk adjustment program requires that Friday Health pay HHS $23,755,788.68 to offset this lower risk. Upon receipt of these funds, HHS will distribute them to insurers whose enrollees had a higher-than-average actuarial risk.

25. Per Colorado's state priority scheme for insolvencies, and consistent with *Fabe*, HHS's claim for these risk adjustment charges is a class 3 claim of the federal government. Colo. Rev. Stat. § 10-3-541(1)(c).

26. On March 23, 2026, Commissioner Conway moved for state court approval to distribute funds to various entities who he asserts hold class 2 claims. Ex. 3. As relevant here, Commissioner Conway sought approval to distribute $1,908,897.03 to certain general creditors for healthcare services they provided to Friday Health's policyholders pursuant to contracts the providers had with Friday Health that entitled them to payment from Friday Health (the "General Creditor Claims"). Ex. 3. These general creditors had each already received $500,000 (the coverage limit) from the state guaranty fund. Ex. 3. The claims included in the proposed $1,908,897.03 distribution exceeded the state guaranty fund's coverage limit. Ex. 3.

27. The claims by these general creditors in excess of the $500,000 they received from the state guaranty fund are not claims by Friday Health policyholders.

28. Commissioner Conway has not yet sought state court approval to distribute funds to satisfy HHS's class 3 claim.

29. On April 14, 2026, attorneys at the Department of Justice contacted counsel for Commissioner Conway to inform him that his proposed distribution would contravene the Federal Priority Statute.

30. On April 20, 2026, the District Court for the City and County of Denver, Colorado approved the distribution. Ex. 4.

31. Per consultation between attorneys at the Department of Justice and counsel for Commissioner Conway, Commissioner Conway has not yet made the $1,908,897.03 distribution.

## FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

32. Plaintiff incorporates paragraphs 1 through 31 of the Complaint as if fully stated herein.

33. A controversy exists between the parties as to the legality of Commissioner Conway's distribution of funds to the General Creditor Claims.

34. Commissioner Conway has already sought and received state court approval for this distribution.

35. Commissioner Conway's proposed distribution of $1,908,897.03 to the General Creditor Claims before paying HHS's class 3 claim for $23,755,788.68 would violate the Federal Priority Statute, 31 U.S.C. § 3713.

36. That statute mandates that a "claim of the United States Government shall be paid first when . . . [1] a person indebted to the Government [2] is insolvent and [3] an act of bankruptcy is committed." 31 U.S.C. § 3713(a) (quotation modified).

37. Friday Health's estate is indebted to HHS in the amount of $23,755,788.68. Ex. 2.

38. Friday Health is insolvent.

39. An "act of bankruptcy" was committed when the state court appointed Commissioner Conway as Friday Health's liquidator as well as when Commissioner Conway appointed Don Roof as Special Receiver.

40. As such, the Federal Priority Statute requires that Commissioner Conway pay HHS's claim before distributing $1,908,897.03 to the General Creditor Claims.

41. To the extent Commissioner Conway contends that Colorado state law, Colo. Rev. Stat. § 10-3-541(1)(b), mandates the distribution to the General Creditor Claims because they are class 2 "claims under policies," that provision of Colorado's state insolvency scheme is conflict-preempted by the Federal Priority Statute. *See* U.S. Const. art. VI, cl. 2.

42. As a result, the United States is entitled to a declaration, under 28 U.S.C. § 2201, that Commissioner Conway's proposed distribution of $1,908,897.03 to the General Creditor Claims would violate the Federal Priority Statute.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

A. A declaratory judgment stating that Commissioner Conway's proposed distribution of $1,908,897.03 to the General Creditor Claims would violate the Federal Priority Statute.

B. A permanent injunction prohibiting Commissioner Conway from making the proposed distribution of funds from Friday Health's estate to the General Creditor Claims until he satisfies HHS's class 3 claim for $23,755,788.68.

C. Any other relief this Court deems just and proper.

*<Remainder of page intentionally blank>*

Dated: October 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MARC S. SACKS
Deputy Director

/s/ Zachary Semple
ZACHARY C. SEMPLE (DC Bar No. 1778723)
Trial Attorney
United States Department of Justice
Civil Division
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-5555
Fax: (202) 514-9163
E-mail: Zachary.C.Semple@usdoj.gov

*Attorneys for the United States of America*